UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE

| | |
|---|---|
| TIMOTHY P. MITCHELL,<br>    Plaintiff,<br><br>V.<br><br>TRUIST BANK INC.,<br>    Defendant. | CIVIL ACTION NO. 7:24-cv-41-KKC<br><br>OPINION AND ORDER |

*** *** ***

Defendant Truist Bank, Inc. moves to dismiss (R. 10) the complaint against it. For the following reasons, the motion will be granted in part and denied in part.

The root of this case is the bank's alleged failure to release a judgment lien it held on real property owned by plaintiff Timothy P. Mitchell.

Truist Bank's predecessor was BB&T. Plaintiff Mitchell alleges that, in 2016, BB&T filed a civil action against him and Masonry Builders of Ky. Inc. in Floyd Circuit Court asserting that Mitchell and Masonry Builders owed it nearly $13,000.

In that action, Truist Bank ultimately secured a judgment against Mitchell for more than $16,000 plus interest and against Masonry Builders for more than $14,000 plus interest. The bank then filed judgment liens against Mitchell and Masonry Builders in the Floyd County Clerk's Office, asserting a lien against all real property they owned. The books that each lien was recorded in is important: the lien against Mitchell was filed in **Lis Pendens Book 85**. The lien against Masonry Builders was filed in **Lis Pendens Book 91**.

Later, in 2019, Truist Bank sent an e-mail to Mitchell agreeing to settle the judgments against Mitchell and Masonry Builders for $5,000 total. Mitchell paid

1

that amount by July 1, 2019. Mitchell alleges that, on February 7, 2022, the bank filed a "Deed of Release of Judgment Lien" in Floyd County releasing the judgment lien filed in **Book 91**, which was the judgment lien against Masonry Builders. Mitchell alleges that the bank did not, however, release the judgment lien against him at that time.

Mitchell alleges that, on November 21, 2023, he sent a certified letter to Truist Bank demanding that it release the judgment lien against him. Truist Bank received that letter on November 24, 2023, but did not release the lien, which was filed in **Book 85**. Mitchell filed this action on May 29, 2024. (R. 1 Notice of Removal 1.)

Mitchell asserts that the bank is liable to him, pursuant to KRS 382.365(4), for certain daily penalties that began accruing from the 15th day after Truist received his letter demanding the lien release.

That statute provides, in relevant part:

> If the court finds that the lienholder received written notice of its failure to release and lacked good cause for not releasing the lien, the lienholder shall be liable to the owner of the real property or to a party with an interest in the real property in the amount of one hundred dollars ($100) per day for each day, beginning on the fifteenth day after receipt of the written notice, of the violation for which good cause did not exist. This written notice shall be properly addressed and sent by certified mail or delivered in person to the final lienholder or final assignee . . . .

KRS 382.365(4).

The penalties increase the longer the lienholder waits without good cause to release the lien after receiving the owner's letter:

> A lienholder that continues to fail to release a satisfied real estate lien, without good cause, within forty-five (45) days from the date of written notice shall be liable to the owner of the real property or to a party with an interest in the real property for an additional four hundred dollars ($400) per day for each day for which good

2

> cause did not exist after the forty-fifth day from the date of written notice, for a total of five hundred dollars ($500) per day for each day for which good cause did not exist after the forty-fifth day from the date of written notice.

KRS 382.365(5).

Mitchell also asserts a claim for intentional infliction of emotional distress. Truist moves to dismiss each claim.

As to the statutory claim, Truist points out that the statute allows penalties only for those days that the bank did not have "good cause" for failing to release the lien. In support of its motion, Truist attaches evidence that, on February 7, 2022, it filed two Deeds of Release of Judgment lien, one of which purported to release the lien against Mitchell and the other of which purported to release the lien against Masonry Builders. The problem was that the Deed of Release purporting to release the lien against Mitchell stated that it released the lien filed in **Book 91**. (R. 1-1 Complaint Ex. 5.) As explained above, it was the lien against *Masonry Builders* that was filed in **Book 91**, not the lien against Mitchell. The lien against Mitchell was filed in **Book 85**. This error in the Deed of Release appears to be the reason the lien against Mitchell was not released on February 7, 2022, even though the lien against Masonry Builders was.

The Court "initially determines what constitutes 'good cause' [under KRS 382.365] as a matter of law." *Hall v. Mortgage Elec. Registration Sys. Inc.*, 396 S.W.3d 301, 305-06 (Ky. 2012). "[H]uman error can form the basis upon which 'good cause' exists for failure to timely release a lien under KRS 382.365." *Id.* at 307.

Truist alleges that it attempted to release the liens but failed because the Deed of Release of Judgment Lien purporting to release the lien against Mitchell had the wrong book number on it. It further alleges that it became aware of the

3

error only after Mitchell filed the complaint in this action. It asserts in its motion that it believed until this complaint was filed that both liens had been released when the Deeds of Release were filed in February 2022. It asserts this is why it took no action even after receiving Mitchell's certified letter on November 24, 2023. (R. 10-1 Mem. 6.)

In his response, however, Mitchell attaches an e-mail dated May 15, 2024 that he asserts was written by his counsel to Truist Bank's former counsel, explaining that the lien against Mitchell had not been released. (R. 11-2 E-mail.) Truist Bank argues that the Court cannot consider that e-mail on a motion to dismiss. The bank, however, asks the Court to accept on a motion to dismiss its assertions that it was not aware of the error until the complaint was filed. The Court cannot do this on a motion to dismiss. If so, the Court would have to consider the e-mail that refutes the bank's assertions.

Moreover, the Kentucky Supreme Court has explained that "good cause" is an affirmative defense to the statutory penalties in KRS 382.365. *Hall*, 396 S.W.3d at 305. Truist Bank moves to dismiss this claim based solely on its argument that Mitchell has failed to plead sufficient allegations. (R. 10-1 Mem. 4.) It cites no authority for its argument that a plaintiff asserting a claim under KRS 382.365 must plead lack of good faith in the complaint. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("Since qualified immunity is a defense the burden of pleading it rests with the defendant. . . We see no basis for imposing on the plaintiff an obligation to anticipate such a defense by stating in his complaint that the defendant acted in bad faith.")

4

The bank relies heavily on *Hall* in its motion. However, that case was not decided on a motion to dismiss. The trial court conducted a bench trial before finding good cause for the defendant's failure to release the lien.

Here, the Court is unable to find based upon the record currently before it "good cause" as a matter of law for the bank's failure to release the lien from the date it received the notice required under the statute (November 24, 2023) to July 10, 2024, which is the date it eventually released the lien against Mitchell's property. (R. 10-3 Amended Deed of Release of Judgment Lien.)

As for the claim for intentional infliction of emotional distress, even assuming the truth of all of Mitchell's allegations, he does not allege conduct that would amount to intentional infliction of emotional distress under Kentucky law. In *Humana v. Seitz*, 796 S.W.2d 1 (Ky.1990), the Kentucky Supreme Court held that, for an IIED claim, a plaintiff must show that the defendant's conduct "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 3 (quoting Restatement (Second) of Torts § 46, comment d). Outrageousness has been found lacking in cases where the defendant:

> (1) refused to pay medical expenses arising out of an injured worker's compensation claim; (2) wrongfully converted the plaintiff's property in a manner that breached the peace; (3) negligently allowed his vehicle to leave the road and struck and killed a child; (4) committed "reprehensible" fraud during divorce proceedings by converting funds belonging to his spouse for the benefit of defendant and his adulterous partner; (5) wrongfully terminated the plaintiff; (6) displayed a lack of compassion, patience, and taste by ordering plaintiff, who was hysterical over the fact that she had just delivered a stillborn child in her hospital room, to "shut up" and then informing her that the stillborn child would be "disposed of" in the hospital; (7) erected a billboard

5

>    referencing defendant's status as a convicted child
>    molester; (8) wrongfully garnished plaintiff's wages
>    pursuant to a forged agreement; and (9)
>    impregnated plaintiff's wife.

*Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 790–91 (Ky. 2004) (footnotes and citations omitted), overruled on other grounds by *Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2014)

Even if Truist Bank intentionally and willfully failed to release the lien against Mitchell as Mitchell asserts in his response, that alleged conduct is not sufficient for an IIED claim. It is wrongful conduct, but it is not "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Humana*, 796 S.W.2d at 3.

For all these reasons, the Court hereby ORDERS as follows:

1) Truist Bank's motion to dismiss (R. 10) is GRANTED in part and DENIED in part as follows:

2) the motion is GRANTED as to Mitchell's claim for intentional infliction of emotional distress and that claim is DISMISSED; and

3) the motion is DENIED as to Mitchell's claim under KRS 382.365.

This 31st day of January, 2025.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY